IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| BRITTAIN L. BROOKS, ROBERT MURRAY, <br><br> Plaintiffs, <br><br> vs. <br><br> LINDSEY R. BROOKS, ALICE SMITH, WILLIAM GENTRY, HON. P. NICHOLAS PRIMM, in his Official capacity as an elected Judge in Jackson County, Georgia, HON. D. VICTOR REYNOLDS, in his Official capacity as an elected Judge in Cobb County, Georgia, CHRISTOPHER CARR, in his Official capacity as Attorney General of the State of Georgia, <br><br> Defendants | CIVIL ACTION FILE NO.   1:24cv04338 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS ALICE SMITH AND WILLIAM GENTRY'S MOTION TO DISMISS**

COMES NOW, Plaintiffs, Brittain L. Brooks and Robert Murray (collectively "Plaintiffs"), and makes this their Response in Opposition to Defendants' Alice Smith and William Gentry's Motion to Dismiss, and shows this Honorable Court, as follows:

1

## INTRODUCTION

This is a case involving the Plaintiffs' challenge to the constitutionality of O.C.G.A. § 19-9-3 (g). The Plaintiffs in this case are parents who incurred attorney fee obligations to the other party that were excessive and wholly unreasonable based on nothing more than a trial judge's determination of "reasonableness." By moving the trial court for attorney's fees, Defendants Gentry and Smith are joint actors with the State in the application and enforcement of O.C.G.A. § 19-9-3. As such, they should remain parties to this suit.

## LEGAL STANDARD

Attacks on subject matter jurisdiction under Fed. R. Civ. Procedure 12(b)(1) come in two forms, facial or factual. A facial attack on the complaint [counterclaims herein] "require[s] the court to merely to look and see if the [plaintiffs in counterclaim] has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in the [counterclaim] are taken as true." Lawrence v. Dunbar, 919 F. 2d. 1525, 1528 (11th Cir. 1990) *quoting* Menchaca v. Chrysler Credit Corp., 613 F. 2d. 507, 511 (5th Cir.); *see also* Quality Food de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F. 2d. 989, 994 (11th Cir. 1983).

I. **THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE FACTUAL ASSERTIONS AND ASSERTIONS THAT PLAINTIFFS' CONSTITUTIONAL RIGHTS HAVE BEEN VIOLATED IS SUCCIENT TO STATE A CASE UPON WHICH RELIEF MAY BE GRANTED.**

Plaintiffs' assertion that their First Amendment right to free speech and access to the Courts are violated by application of O.C.G.A. § 19-9-3(g) is sufficient to state a cause upon which relief may be granted and the Motion to Dismiss should be denied. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that

> "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (Id.).

3

Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467U.S. 69, 73 (1984).

Here, Defendants move for dismissal asserting that Plaintiffs "must assert facts to establish allegations of improper conduct." (Doc. 10, Pg. 3). Defendants cite to Kyle K v. Champman, 208 F.3d. 940 (11th Cir. 2000) in support of their Motion. Kyle K is not applicable to the instant matter as it did not implicate or challenge a state statute as being unconstitutional, but involved an allegation of mistreatment of a minor. (Id.).

Rather, the appropriate legal analysis of "…[a] constitutional claim brought pursuant to [42 U.S.C. § 1983] must begin with the identification of a specific constitutional right that has allegedly been infringed." Paez v. Mulvey, 915 F.3d. 1276, 1285 (11th Cir. 2019). Plaintiffs identify the constitutional right that has been infringed in their complaint. (Doc. 1, Count I (violation of U.S. Const. Amend. XIV DUE PROCESS), Count II (unconstitutional infringement on a parent's inherent right and liberty interest in raising his child through a fee-shifting imposition of attorney's

4

fees and because the statute is unconstitutionally vague, Count III (14th Amendment violation), Count IV (5th Amendment violation).

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or ... the right ... to petition the government for a redress of grievances." U.S. Const. Amend. I. The Amendment protects "not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). "The First Amendment right to petition the government for a redress of grievances includes a right of access to the courts." Bank of Jackson Cty., v. Cherry, 980 F.2d. 1362, 1370 (11th Cir. 1993); *see also* Cal. Motor Transp. Co., v. Trucking Unlimited, 404 U.S. 508, 510 (1972) (stating "[t]he right of access to the courts is indeed but one aspect of the right of petition"). The right to petition the government for a redress of grievances is "one of the most precious of the liberties safeguarded by the Bill of Rights," and is "high in the hierarchy of First Amendment values. BE&K Const. Co., v. NLRB, 536 U.S. 516, 524 (2002). The right to petition the government for redress of grievances is such a fundamental right as to be "implied by '[t]he very idea of a government, republican in form.'" Id. at 524-25.

Plaintiffs have asserted numerous Constitutional grounds upon which they seek relief. *See generally* Doc. 1. Plaintiffs do not have to establish that Defendants Smith or Gentry were engaged in misconduct; only that O.C.G.A. § 19-9-3(g) is unconstitutional and declared such. Therefore, Plaintiffs have set forth a claim for which relief may be granted and this Court should deny the Motion to Dismiss.

Assuming, *argunendo,* that Plaintiffs must establish "misconduct" on the parts of Defendants Smith and Gentry, they have established a claim for which relief may be granted because they have acted together with and have received significant aid from state officials through the imposition of a judgment based on an unconstitutional statute.

The United States Supreme Court has consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a "state actor" for purposes of the Fourteenth Amendment. The rule in these cases is the same as that articulated in <u>Adickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 152 (1970):

> " 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the

6

>State or its agents,' " *quoting* U.S. v. Price, 383 U.S. at 794.

Further, in Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982), the United States Supreme Court held that the petitioner was deprived of his property through state action; respondents were, therefore, acting under color of state law in participating in that deprivation. Id.

Lugar is still valid and binding law. The 11th Circuit has appeared to receive Luger with someone unfavorable treatment in Natl. Broadcasting Co., Inc. v. Commun. Workers of America, 860 F.2d 822 (11th Cir. 1988). However, Natl. Broadcasting is distinguishable from the instant matter. Specifically, Natl. Broadcasting involved a dispute between two parties over a lease. (Id.). This case involves state actors, trial judges, acting in concert with private citizens to apply and then enforce a judgment that deprives Plaintiffs of their property and violates basic Constitutional protections.

## II. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE PLAINTIFFS ARE MOVING FOR DECLARATORY AND INJUNCTIVE RELIEF AND PLAINTIFFS REQUEST FOR AN INJUNCTION IS PROPER.

This Court should deny the Motion to Dismiss for two reasons. First, Plaintiffs have stated a cause of action beyond merely seeking injunctive relief. Second, Plaintiffs request for an injunction is proper.

7

A. <u>Plaintiffs have stated a cause of action beyond merely seeking injunctive relief.</u>

Defendants move this Court to dismiss the action against them because "injunction is a remedy and not a separate cause of action." (Doc. 10, Pg. 4). Plaintiffs do not dispute that injunctive relief, standing alone, fails to state a claim upon which relief may be granted. Instead, Defendants ignore that Plaintiffs have asserted that O.C.G.A. § 19-9-3 does not meet strict scrutiny requirements of the United States Constitution, it violates their right to petition the government for redress, it has a chilling effect on speech and the First Amendment, among other violations. (Doc. 1). Plaintiffs further assert that application of the unconstitutional statement to them violates 42 U.S.C. § 1983. (<u>Id.</u>).

Moreover, the factual allegations in the Complaint reflect that Plaintiff, Robert Murray, was ordered to pay Defendant Smith and Gentry approximately $100,000.00 in attorney's fees pursuant to O.C.G.A. § 19-9-3. (Doc. 1, ¶18). Defendant Smith and Gentry sought, and received, a financial windfall through the deprivation of Plaintiff Robert Murray's Constitutional rights. (<u>Id.</u>). In viewing the factual allegations as true, this Court has the authority to declare unconstitutional, which would entitle Plaintiffs to the remedy of an injunction. Accordingly, Plaintiffs have

established viable claims, and are not simply seeking a remedy, and the Motion should be denied.

  B. <u>Plaintiffs request for an injunction is proper</u>.

Defendants move this Court to dismiss the Complaint because "Plaintiffs' claims for an injunction are improper because there is a value attached to the action at issue." (Doc. 10, Pg. 6). They go on to make broad, sweeping arguments that "…the Court will not be able to find that Plaintiffs have stated an irreparable injury has arisen as a result of the order requiring payment of attorney's fees to Defendant Gentry due to fees incurred through is representation of Defendant Smith." (Id.). This argument misses the point that injunction to stop civil rights and Constitutional violations often are the only remedy available to a litigant. In <u>United States v. Raines</u>, 362 U.S. 17 (1960), the United States Supreme Court held that the United States had the power to enjoin the registrars in a Georgia county from discriminating against Negroes who attempted to register to vote. The Court declared that ". . . there is the highest public interest in the due observation of all the constitutional guaranties, including those that bear the most directly on private rights, and we think it perfectly competent for Congress to authorize the United States to be the guardian of that public interest in a suit for injunctive relief." Nothing could bear more directly on a private

9

citizen than state action that interferes with his liberty interest in raising his child. In fact, the United States Supreme Court has identified, the interest of parents in the care, custody, and control of their children as not only a *fundamental liberty interest* under the United States Constitution, but *the oldest* of all such fundamental liberty interests.

> The [Fourteenth Amendment's Due Process Clause] also includes a substantive component that provides heightened protection against government interference with certain fundamental rights and liberty interests. The liberty interest at issue in this case — the interest of parents in the care, custody, and control of their children — is perhaps the oldest of the fundamental liberty interests recognized by this Court. More than 75 years ago, in Meyer v. Nebraska, 262 U.S.390, 399, 401 (1923), we held that the "liberty" protected by the Due Process Clause includes the right of parents to "establish a home and bring up children" and "to control the education of their own."

Troxel v. Granville, 530 U.S. 57, 65 (2000) (punctuation and citations omitted). The Supreme Court of Georgia (hereinafter "SCOGA") has found an analogous—yet far more extensive—fundamental liberty interest in the right to the custody and control of one's child within the Constitution of the State of Georgia.

> Parents have comparable interests under our state constitutional protections of liberty and privacy rights. The right to the custody and control of one's child is a fiercely guarded right in our society and in our law. It is a right that should be infringed

> upon only under the most compelling circumstances.

Brooks v. Parkerson, 265 Ga. 189, 192 (1995).  There can be no higher "irreparable injury" than the State, acting through judges in concert with private attorneys, to reallocate wealth, deny a parent the right to access to the courts through the chilling effect of imposition of attorney's fees, and denial of free speech, as occurred to two separate parents in this State.  (Doc. 1).

Further, as Plaintiff Murray stated, the Supreme Court of Georgia denied his Application to declare O.C.G.A. § 19-9-3 unconstitutional.  (Doc. 1, ¶ 33).  Plaintiff Murray has no remedy available to him to bring about a cessation of the violation of his inherent liberty interest in raising his daughter.  (Id.).

More importantly, "[T]he Fourteenth Amendment forbids the government to infringe . . . fundamental liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  Washington v. Glucksberg, 521 U.S. 702, 721 (1997) (emphasis supplied and quotations and citations omitted). O.C.G.A. 19-9-3(g) fails to meet this standard by offering no notice of prohibited conduct. In fact, the statute conspicuously devoid of any statement delineating the specific conduct to which the award of attorney fees is intended to apply. As a result, Georgia law grapples with

inconsistencies in O.C.G.A. § 19–9–3(g) stemming from the omission of an ascertainable standard of conduct, which has led to conflicting rulings. For example, in <u>Moore v. Moore-McKinney</u>, 297 Ga. App. 703, 712, (2009), the Court of Appeals remanded the case citing that, "… a fee award under OCGA § 19–9–3(g) would not necessarily be focused on Moore's conduct." Yet, <u>Brown v. Brown</u>, 359 Ga. App. 511, 523 (2021) vacated the trial court order, "Because the trial court's order does not limit its award of OCGA § 19-9-3 (g) attorney fees to fees incurred by the father related to sanctionable conduct by the mother with respect to the child custody action." *See also* <u>Wilson v. Perkins</u>, 344 Ga. App. 869, 811 (2018) reversing the award of attorney fees because the trial court failed to specify the potentially sanctionable conduct under O.C.G.A. § 19-9-3 (g) among other reasons.  A declaration by this Court that O.C.G.A. § 19-9-3 is unconstitutional followed by an injunction prohibiting enforcement of attorney's fees awarded to Defendants serves the "highest public interest in the due observation of all the constitutional guaranties, including those that bear the most directly on private rights."

Finally, in balancing the hardships between the litigants, this Court considers that the attorney fee award - $100,000.00 — is an amount that places an insurmountable financial burden on Plaintiff Murray.  (Doc. 1, ¶

12

33). The granting of such an award has significant consequences for him, essentially eliminating his capacity to exercise the constitutionally protected rights and potentially resulting in a deprivation of liberty. Specifically, nonpayment of attorney fees, as mandated by O.C.G.A. § 19-9-3(g), is subject to contempt proceedings, possibly resulting in incarceration with a purge condition requiring payment of the entire fee award. Plaintiff could also face deprivation of his property through enforcement of a levy for payment. In viewing the facts in a light favorable to Plaintiff, he meets the remedy of an injunction is warranted. Accordingly, Plaintiffs request this Court deny the Motion to Dismiss.

## CONCLUSION

Based on the above and foregoing, Plaintiffs request this Court deny the Motion to Dismiss.

This submission was prepared using Times New Roman point font in compliance with L. R. 5.1(C).

This 21st day of January, 2025.

> /s/ *Rebecca W. McLaws*
> Rebecca W. McLaws
> Georgia Bar No. 350156
> Attorney for Plaintiffs

3745 Cherokee Street, Suite 205
Kennesaw, Georgia 30144
(770) 406-6624 ext. 101

CERTIFICATE OF SERVICE

The undersigned does hereby certify that she served the Defendants, Hon. Victor Reynolds, Hon. P. Nicholas Primm, and Hon. Christopher Carr, through their attorney of record, by ECF statutory service, as follows:

Ellen K. Begley, Esq.
351 Washington Avenue, Suite 300
Marietta, Georgia 30060

Respectfully submitted this 21st day of January, 2025.

/s/ *Rebecca W. McLaws*
Rebecca W. McLaws
Georgia Bar No. 350156
Attorney for Plaintiffs

3745 Cherokee Street NW, Suite 205
Kennesaw, Georgia 30144
(770) 406-6624 (office)
rebecca@mclawslawgroup.com